IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>vs.<br>JOHN TRINIDAD QUALLS,<br>　　　　Defendant. | Case No. 23-cr-2021-CJW<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I.　INTRODUCTION

On April 19, 2023, the Grand Jury returned an Indictment, charging Defendant with one count of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. Sections 841(a)(1) and (b)(1)(A). (Doc. 16.)

The matter before me is Defendant's motion to suppress. (Doc. 28.) The motion was filed June 20, 2023 and contained an inventory of items to be suppressed which includes: Defendant's statements to authorities, contents of his phone, controlled substances, and any other evidence obtained as a result of the search and interrogations of Defendant. (Doc. 28.) The Government timely filed a response on June 27, 2023. (Doc. 30.) The Honorable C.J. Williams, United States District Court Judge, referred the motion to me for a Report and Recommendation. I held a hearing on Defendant's motion to suppress on July 12, 2023. (Doc. 36.) At the hearing, counsel for the Government advised the Court she had just learned of the existence of a search warrant for Defendant's phone. (*Id.*) The hearing on Defendant's motion to suppress was reset for July 21, 2023. (*Id.*) On July 19, 2023, with leave of the Court, the Government filed a Supplemental Brief. (Doc. 40.) Defendant did not file any supplemental briefing.

1

The motion arises from law enforcement's stop and subsequent search of Defendant's vehicle. At the hearing, Government's Exhibit 1, dashboard camera footage from Deputy Dylan Isakson's patrol vehicle, was admitted without objection.

Defendant moves to suppress all evidence related to the search of his person, vehicle, and personal phone. (Doc. 28.) Evidence he seeks to suppress includes: methamphetamine seized from his vehicle during the traffic stop, admissions made by Defendant concerning his knowledge or possession of methamphetamine, and all statements made by Defendant during questioning at the Floyd County Jail. (*Id.*)

At the hearing, Defendant's Exhibit A, Deputy Dylan Isakson's body camera video, was also admitted without objection.

The Government called one witness: Deputy Dylan Isakson. I found the witness credible. For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Suppress.

## II. FINDINGS OF FACT

At 2:54 a.m. on December 31, 2022, Floyd County Sheriff's Office Deputy Dylan Isakson[1] pulled Defendant over for speeding. (Government Ex. 1, Isakson Dash-Camera Footage, at :30-36.)[2] Deputy Isakson was positioned in the median near Rudd Park Road and Highway 18. His patrol car lights were off, and he was operating his radar detector from a stationary position. Defendant's vehicle approached Deputy Isakson's patrol car from the rear, traveling westbound. Deputy Isakson activated his radar unit and obtained a reading of Defendant's vehicle traveling 88 miles per hour in a 65 mile-per-hour zone.

---

[1] Deputy Isakson is a graduate of the Iowa Law Enforcement Academy and has been employed by the Floyd County Sheriff's Office for approximately one year and seven months. Prior to joining the Floyd County Sheriff's Office, Deputy Isakson was employed by the Charles City Police Department for approximately eleven months.

[2] Camera footage time references indicate the time lapsed in the recording.

(*Id.*; Isakson Hr'g Test. at 10.) Deputy Isakson turned on the lights of his patrol car, entered the roadway, caught up to Defendant, and initiated a traffic stop. (Isakson Hr'g Test. at 11.) Defendant's vehicle pulled over to the side of the road.

Deputy Isakson approached the vehicle from the passenger side and noted that Defendant was alone in the vehicle. (*Id.*) Deputy Isakson asked Defendant where he was traveling from, and Defendant replied that he was traveling from visiting his mother in Michigan. (Government Ex. 1 at 1:50.) When asked where he was driving to, Defendant replied that he was going to visit his sister in Clear Lake, Iowa. (*Id.*) Defendant was fully compliant and provided Deputy Isakson his Arizona driver's license and a pouch containing his vehicle registration and proof of insurance. (*Id.* at 2:15-2:50.) Deputy Isakson testified that Defendant's overly friendly manner and overly compliant behavior, combined with his apparent nervousness, raised suspicion. (Isakson Hr'g Test. at 14, 25-26.)

Deputy Isakson returned to his patrol vehicle to run Defendant's information and observed marijuana residue, or "shake," when handling the pouch that contained Defendant's vehicle registration. (Defendant Ex. A at 2:15-5:11.) At the hearing, Deputy Isakson explained that once he was in his patrol car, he could smell the odor of marijuana emanating from the paperwork and observed marijuana residue or green leafy residue inside the pouch containing the vehicle registration. (Isakson Hr'g Test. at 13.) Deputy Isakson then returned to Defendant's vehicle to explain that he had probable cause to search the vehicle.[3] (Defendant Ex. A at 5:50-6:15.) Deputy Isakson also asked Defendant a series of questions pertaining to marijuana. (*Id.* at 5:30.) Defendant stated there was not any marijuana in the vehicle. (*Id.* at 5:37.) Defendant was asked if

---

[3] Defendant did not consent to the search of his vehicle, however Deputy Isakson repeatedly communicated that he had probable cause.

3

marijuana was legal in Arizona, his state of residence, to which he replied "yes." (*Id.* at 5:43.) Defendant stated that he was not under the influence while driving but admitted that he had legally smoked a "joint" of marijuana earlier that day while he was in Michigan. (*Id.* at 6:20-6:50.) At the hearing, Deputy Isakson also stated that when he re-approached Defendant's vehicle, he observed more marijuana residue near the shifter of the center console in Defendant's car. (Isakson Hr'g Test. 14.)

Deputy Isakson instructed Defendant to exit the vehicle and he performed a pat-down of Defendant's person to detect any weapons and ensure his safety. (*Id.* at 7:00-7:10.) Deputy Isakson found a large quantity of cash in Defendant's pocket. (*Id.* at 8:30-8:50.) When asked how much cash was in his pocket, Defendant replied "probably 600 bucks."[4] (*Id.*) Deputy Isakson placed Defendant in the front seat of his patrol car. (Isakson Hr'g Test. at 15.) At this time, Defendant was not handcuffed. (*Id.*) At this point Defendant had access to his cell phone and may have used it while the search proceeded.

Deputy Isakson then began searching Defendant's vehicle while Defendant sat uncuffed in the patrol vehicle. Defendant appeared nervous and called Deputy Isakson back to the patrol vehicle several times. Deputy Isakson testified that he believed Defendant was attempting to divert his attention from the search and make the search go more quickly. (*Id.* at 16.) The search produced a vape pen in the driver's side door. Deputy Isakson could smell the odor of burnt THC on the vape pen. Deputy Isakson also found a large bag of methamphetamine under the front passenger seat. (*Id.* at 17.) After finding the first bag of methamphetamine, Deputy Isakson returned to the patrol car and

---

[4] The cash was later counted and determined to be $927. (Isakson Hr'g Test at 15.) While the presence of this cash was noted in the Government's brief (Doc. 30-1 at 2) and in the hearing testimony, it was not tied to the issues in dispute and I cannot find it contributed to the existence of probable cause.

4

had Defendant place his phone on the car's dash, as Defendant had been speaking to his mother, and then placed Defendant in handcuffs in front of his body.[5] (*Id.* at 17-18.) Deputy Isakson returned to Defendant's vehicle to complete the search and found a second bag of methamphetamine on the front passenger's seat.[6] (*Id.* at 18.)

### III. DISCUSSION

#### A. *Parties' Arguments*

Relying on *United States v. Parks*, 902 F.3d 805 (8th Cir. 2018), Defendant argues that Deputy Isakson did not have probable cause to search the vehicle without a warrant because Deputy Isakson did not note the odor of marijuana when he initially approached the vehicle. (Doc. 29 at 6.) Defendant also points out that marijuana is legal in Michigan, where Defendant was traveling from, and in Arizona, Defendant's state of residence. Defendant contends that previous legal possession of marijuana does not imply that he illegally possessed marijuana at the time of the traffic stop. (*Id.* at 7.) Thus, Defendant concludes that "the evidence from the search should be suppressed because it was the result of a warrantless search that lacked probable cause." (*Id.*)

Defendant also argues that the pre-*Miranda* statements he made after he was handcuffed as well as the statements he made to an Iowa Division of Narcotics Enforcement officer were obtained in violation of his Fifth Amendment rights.

The Government argues that Deputy Isakson had probable cause to search Defendant's vehicle because there was an odor of marijuana and marijuana residue in the

---

[5] Because the Government has agreed not to introduce into evidence Defendant's statements after he was handcuffed, the Court has not made any findings of fact relating to those statements or other events after all the methamphetamine was discovered. As noted at the hearing, because of the Government's agreement (or concession) to not introduce evidence of subsequent statements, I declined to hear evidence about those statements.

[6] The Government will introduce into evidence the second bag of methamphetamine because it was a product of the search that was initiated prior to Defendant being handcuffed.

5

pouch containing Defendant's registration. Further, the Government points out that there was also marijuana residue inside Defendant's vehicle on the center console. (Doc. 30-1 at 4.)

The Government argues that the remainder of Defendant's motion is moot because it will not offer evidence that is the subject of Defendant's Motion to Suppress on the Fifth Amendment grounds asserted by Defendant. Specifically, the Government asserts that it will not introduce into evidence any of Defendant's statements to authorities after he was handcuffed by Deputy Isakson on December 31, 2022. (*Id.* at 5.) However, the Government relies on *United States v. Baftiri*, 263 F.3d 856, 857 (8th Cir. 2001) for the right to use suppressed evidence for impeachment purposes if Defendant chooses to testify at trial. (*Id.* at 5-6.)

In its post-hearing brief, the Government notes that the contents of the Defendant's phone were obtained by a search warrant after Defendant was handcuffed, but without reliance on any information obtained after Defendant was handcuffed. Therefore, the Government argues, the content of the phone need not be suppressed because of any alleged later constitutional violation. Moreover, the Government argues the warrant is supported by probable cause and/or a good faith reliance on the warrant. Defendant asserted at the hearing that the contents of the cell phone should be excluded as "fruit of the poisonous tree," if the initial stop was improper.

### B. Relevant Law

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)); *Terry*

6

*v. Ohio*, 392 U.S. 1, 9 (1968)) (internal quotations omitted). "A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (citing *United States v. Hollins*, 685 F.3d 703, 705-06 (8th Cir. 2012)). Officers may conduct investigatory stops if they have reasonable suspicion that criminal activity may be afoot. *United States v. Patrick*, 776 F.3d 951, 954 (8th Cir. 2015).

In the context of traffic violations, a police officer may stop a vehicle only when the officer has "'at least a reasonable, articulable suspicion that criminal activity has occurred or is occurring,' and 'a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.'" *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021) (quoting *United States v. Martin*, 411 F.3d 998, 1000 (8th Cir. 2005)); *see also United States v. $45,000.00 in United States Currency*, 749 F.3d 709, 715 (8th Cir. 2014) ("Any traffic violation, however minor, provides probable cause for a traffic stop.") (Quoting *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994))). Generally, a traffic stop "is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). A minor traffic violation is sufficient to establish probable cause for an officer to conduct a traffic stop even if the stop is pretext for another investigation. *United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007) (quoting *United States v. Coney*, 456 F.3d 850, 855-56 (8th Cir. 2006)). An officer's actual motivation for making the stop beyond simply issuing a traffic violation is irrelevant provided that the officer has an objectively good reason for making the stop. *Id*.

Warrantless searches are *per se* unreasonable, with a few well-established exceptions. *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). However, courts have long recognized the "automobile exception" to the Fourth Amendment. *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003); *see generally Carroll v. United*

7

*States*, 267 U.S. 132, 158-59 (1925). "The so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *Kennedy*, 427 F.3d at 1140-41 (citations omitted); *see also United States v. Castaneda*, 438 F.3d 891, 893 (8th Cir. 2006) ("The warrantless search of a vehicle is constitutional pursuant to the automobile exception to the warrant requirement, if law enforcement had probable cause to believe the vehicle contained contraband or other evidence before the search began.") (Quotation omitted)). The burden is on the Government to justify warrantless searches. *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984).

In *Wells*, the Eighth Circuit Court of Appeals articulated probable cause for searching a vehicle during a lawful traffic stop:

> "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir.2000). . . . "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). "[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam).

347 F.3d at 287-88.

C. **Analysis**

1. ***The vehicle search***

Deputy Isakson had probable cause to stop Defendant's vehicle. Iowa Code Section 321.285 provides in pertinent part that:

> 1. Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit the person to bring it to a stop within the assured clear distance ahead, such drive having the right to assume, however, that all persons using said highway will observe the law.

*Id.* Here, Defendant was driving at a speed of 88 miles per hour on a highway with a posted speed limit of 65 miles per hour. Deputy Isakson observed Defendant driving 23 miles per hour over the limit and thus had probable cause to initiate the traffic stop.

Deputy Isakson also had probable cause to search Defendant's vehicle. "As long as the law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception." *United States v. Mayo*, 627 F.3d 709, 713-14 (8th Cir. 2010) (*quoting United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000)). "Probable cause exists 'when given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence will be found in a particular place.'" *Id.* In *United States v. Merrett*, 8 F.4th 743 (8th Cir. 2021), the Eighth Circuit concisely articulated the "automobile exception" to the Fourth Amendment:

> The Fourth Amendment requires law-enforcement officers to obtain a warrant before initiating a search, but "[d]uring a lawful investigatory [traffic] stop, officers may search a vehicle [without a warrant] when they develop probable cause to believe it contains contraband or evidence of criminal activity." *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020). During this traffic stop, officers smelled marijuana emanating from the SUV. And "[w]e have repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception." *Id.* Thus, the officers' search of the SUV did not violate [the defendant's] Fourth Amendment rights.

*Id.* at 751.

Fourth Amendment jurisprudence has evolved since several states have legalized and regulated the marijuana industry. Addressing questions pertaining to federalism, the Court in *Raich* held that state law is inferior for the federal prosecution of controlled substances. *Gonzales v. Raich*, 545 U.S. 1, 29 (2005). "Where there is a conflict between federal and state law with respect to marijuana, '[t]he Supremacy Clause [in Article VI of the Constitution] unambiguously provides . . . federal law shall prevail.'" *United States v. Schostag*, 895 F.3d 1025, 1028 (8th Cir. 2018) (*quoting Raich*, 545 U.S. at 29). Further, under *Raich*, the Controlled Substances Act "designates marijuana as contraband for *any* purpose." 545 U.S. at 27. (Emphasis in original). In *United States v. Garth*, No. 3:20-CR-43-TAV-HBG, 2021 WL 8442271 (E.D. Tenn. July 6, 2021), the district court recognized that:

> the possession of marijuana remains illegal under federal law. *Gonzalez v. Raich*, 545 U.S. 1, 27 (2005) (observing that the Controlled Substances Act "designates marijuana as contraband for any purpose"). State laws legalizing marijuana or some part of the marijuana plant do not preempt federal law. *United States v. Hicks*, 722 F. Supp. 2d 829, 833 (E.D. Mich. 2010) (holding that "[i]t is indisputable that state medical-marijuana laws do not, and cannot, supercede federal laws that criminalize the possession of marijuana"); *see also Young v. United States*, Nos. 4:06–cr–14, 4:10–cv–72, 2013 WL 4679931, *7 (E.D. Tenn. Aug. 30, 2013) (Edgar, J.) (observing that "[t]he manufacture, possession and distribution of marijuana, a Schedule I controlled substance, continues to be illegal under federal law for the entire United States of America, even if it is possessed for medical purposes in accordance with state laws").

*Id*. at *13. Bearing the foregoing in mind, the district court concluded that a trooper's detection of the odor of marijuana emanating from a vehicle provided the trooper probable cause to search the vehicle regardless of how state laws on marijuana were evolving. *Id*.; *see also United States v. Thomas*, No. 4:22-CR-40046-KES, 2023 WL 4424092, at *9 (D.S.D. June 2, 2023) ("Although the legality of marijuana varies among the 50 states under state law, . . . marijuana is illegal under federal law[.]").

10

Here, when he was pulled over for speeding, Defendant provided Deputy Isakson his driver's license and a pouch containing his vehicle registration. While processing Defendant's information in his patrol car, Deputy Isakson smelled the odor of marijuana emanating from Defendant's documents and observed marijuana residue/shake in the pouch. When he approached the Defendant's vehicle again, Deputy Isakson observed marijuana residue/shake on the center console of the vehicle. Defendant also admitted smoking a marijuana joint the previous morning. Taken together, I find that the foregoing provided Deputy Isakson probable cause to search Defendant's vehicle. *See Merrett*, 8 F.4th at 751 ("We have repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception") (quotation omitted); *United States v. Smith*, 990 F.3d 607, 612 (8th Cir. 2021) ("[B]ased on the smell of marijuana emanating from the car and the marijuana cigarette found in the passenger's jacket, the officers also had probable cause to search the entire vehicle for drugs and drug paraphernalia"); *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011) (providing that the odor of marijuana from a vehicle and passenger in vehicle admitting smoking marijuana provided law enforcement with reasonable probability that marijuana was located inside the vehicle providing the officers with probable cause to search the vehicle).

Defendant's citation to *Parks* is to no avail because *Parks* determined that the officer had probable cause to search the vehicle "under the automobile warrant exception when he opened the door and smelled marijuana, saw suspected marijuana on the [vehicle's] floor, and observed an apparently comatose young woman therein." 902 F.3d at 813. Thus, *Parks* is similar to the present case and supports the conclusion that Deputy Isakson had probable cause to search Defendant's vehicle. It appears, however, that Defendant is arguing that to have probable cause a law enforcement officer must smell marijuana immediately upon approaching a stopped vehicle. *Parks* does not support this

proposition and does not hold that a law enforcement officers must smell marijuana immediately upon approaching a stopped vehicle. The fact that Deputy Isakson did not smell marijuana when he first spoke with Defendant at his vehicle, but first smelled marijuana emanating from Defendant's documentation when he returned to his patrol vehicle does not defeat probable cause. At the hearing, Deputy Isakson testified that factors such as wind direction, wind speed, weather, the number of windows open in a vehicle, and which side of a vehicle an officer approaches may affect an officer's ability to smell marijuana emanating from a vehicle. (Isakson Hr'g Test. at 46.) Deputy Isakson testified that he believed that wind affected his ability to immediately smell marijuana emanating from Defendant's vehicle when he first approached the vehicle during the traffic stop. (*Id.*) Moreover, in addition to the odor of marijuana emanating from Defendant's documentation, Deputy Isakson also observed marijuana residue/shake inside the pouch containing Defendant's registration information, observed marijuana residue/shake on the center console of Defendant's vehicle upon returning to the vehicle, and Defendant admitted to Deputy Isakson that he smoked a marijuana joint the previous morning, all prior to searching the vehicle. Thus, based on the totality of the circumstances, I find that Deputy Isakson had probable cause to search Defendant's vehicle even though he did not initially smell the odor of marijuana when he first talked to Defendant during the traffic stop.

To the extent that Defendant argues that the probable cause finding is inapplicable because he is from Arizona where marijuana is legal and was coming from Michigan where marijuana is also legal, such an argument is without merit. Under federal law, the Controlled Substances Act "designates marijuana as contraband for *any* purpose." *Raich*, 545 U.S. at 27 (emphasis in original); *see also Thomas*, 2023 WL 4424092, at *9 ("Although the legality of marijuana varies among the 50 states under state law, . . . marijuana is illegal under federal law"); *Garth*, 2021 WL 8442271, at *13.

Accordingly, based on the totality of the circumstances, I find that Deputy Isakson had probable cause to initiate a traffic stop on Defendant for speeding. I also find that Deputy Isakson had probable cause to search Defendant's vehicle. Therefore, I recommend that the motion to suppress the vehicle search be denied.

### 2. *Defendant's statements after he was handcuffed*

I recommend the Court decide that Defendant's motion to suppress evidence of statements he made after being handcuffed is moot. The Court does not have "the power to decide . . . when the issues are not live, and the parties lack a legally cognizable interest in the outcome." *United States v. Sanders*, 276 Fed. Appex. 532, 533 (8th Cir. 2008) (*citing Murphy v. Hunt*, 455 U.S. 478 (1982)). In *United States v. Armstead*, No. CR11-0143, 2011 WL 6204598, (N.D. Iowa Dec. 13, 2011), report and recommendation adopted, No. 11-CR-143-LRR, 2011 WL 6842511 (N.D. Iowa Dec. 29, 2011) the court discussed the issue of mootness in a Defendant's motion to suppress:

> Other courts have handled this issue similarly. In *United States v. Fenstermaker*, [No. 07-78 (DSD/RLE),] 2007 WL 1242891 (D. Minn. [Apr. 27, 2007]), the Court denied as moot two motions to suppress evidence after the government advised the Court that it would not offer the evidence in its case in chief at trial.
>
>> [W]hile certain evidence was seized from the Defendant, the Government advises that it does not intend to offer, at Trial, any evidence that was obtained by search or seizure, and urges, therefore, that the Defendant's Motion to Suppress be denied as moot. The Defendant does not argue to the contrary, and therefore, we recommend that the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be denied as moot.
>
> *Id.* at *1. *See also United States v. Knight*, [No. 07-20923-CR,] 2008 WL 4755678 (S.D. Fla. [Oct. 27, 2008]); *United States v. Lemke*, [No. 08-216(1) (DWF/RLE),] 2008 WL 4999246 (D. Minn. [Nov. 19, 2008]); *United States v. Tenerelli*, [No. 07-194(1) (JNE/FLN),] 2008 WL 420018 (D. Minn. [Feb. 13, 2008]); and *United States v. Valenzuela Lopez*, [No.

13

04-2641(1-3),] 2004 WL 2713257 (D. Minn. [Nov. 23, 2004]).  In none of those cases, however, did the parties contest the issue of whether the motion should be granted under these circumstances, or denied as moot.

As a practical matter, it is unclear whether there is a significant difference between granting the motion to suppress or denying the motion as moot (based on the Government's promise not to offer the evidence during its case in chief).  Under either alternative, the Government is precluded from offering into evidence during its case in chief the items seized during the warrantless search.  When the Government agrees not to offer evidence which is the subject of the motion to suppress, however, it would appear that the common practice is to deny the motion as moot.  Accordingly, the Court recommends that outcome here.  *See also United States v. Mitchell*, No. 08–CR–0046 (N.D. Iowa).

*Id.* at *2.  Because the Government has conceded that it will not introduce into evidence Defendant's handcuffed statements or a later interview, I recommend that the corresponding portion of Defendant's motion be denied as moot.

### 3. *The contents of Defendant's phone*

On July 12, 2023, approximately 15 minutes before the scheduled suppression hearing, the Government was alerted that a search warrant was obtained by law enforcement for the contents of Defendant's phone.  (July 12, 2023 Hr'g Transcript at 3.)  The Government stated that the phone search warrant "application is based only on events that took place during the probable cause search of the car and nothing after the [D]efendant was handcuffed or statements that the [D]efendant made to Agent Ochoa."  (*Id.*)  As a result of the new information regarding the search warrant for Defendant's phone, the suppression hearing was reset to July 21, 2023, and the parties were given the opportunity to provide the Court with supplemental briefing on the issue.

Defendant did not file any supplemental briefing.  The Government timely filed a supplemental brief on July 19, 2023.  (Doc. 40.)  In its supplemental brief, the Government states that within the four corners of the search warrant application "affiant

14

Deputy Dylan Isakson requested permission to search [D]efendant's phone based on the facts surrounding the stop and search of [D]efendant's car." (Doc. 40 at 2; Government Ex. 2). The Government notes that "Deputy Isakson did not mention any of the evidence that the United States previously indicated that it would not use in its case-in-chief at trial, including [D]efendant's statements to authorities after [D]efendant was handcuffed." (*Id.*) The Government argues that Defendant's motion to suppress the contents of his cellphone should be "denied as moot because officers had a lawful independent basis to search [Defendant's] phone pursuant to a valid search warrant." (*Id.*). The Government points out that "Defendant has not argued that the warrant lacked probable cause, that officers lacked good faith in executing the warrant, or that there was a *Franks* violation." (*Id.*) The Government maintains that "[b]ecause of the valid search warrant, at trial, the United States may introduce into evidence [D]efendant's phone contents, regardless of the circumstances relating to his consent to the search of his phone in December 2022." (*Id.* at 2-3.)

At the suppression hearing held on July 21, 2023, I confirmed that Defendant's decision not to file supplemental briefing meant that Defendant was not seeking to suppress evidence obtained from the phone warrant, except as fruit of the poisonous tree.[7] (July 21, 2023 Hr'g Transcript at 1.) I also confirmed that the Government did not intend to offer into evidence anything it obtained following the discovery of the methamphetamine in Defendant's vehicle, except the contents of Defendant's phone which was a result of the search warrant. (*Id.* at 2.) I also confirmed that Defendant was not seeking to suppress "statements in the car that [Defendant] might have made on his phone that weren't as a product of interrogation." (*Id.* at 4.)

---

[7] Having concluded the stop and subsequent search were constitutional, I conclude there is no poisonous tree and, therefore, no poisonous fruit.

Accordingly, because Defendant is not contesting the search warrant for his phone, I recommend that the Court permit the Government to introduce into evidence at trial the contents of Defendant's phone that were not the product of interrogation.

At the hearing, I attempted to demarcate the line between the evidence that is admissible and that which is not based on the Government's concession. The Government will not seek to offer evidence it obtained after Defendant was first handcuffed except (1) the second package of methamphetamine located in Defendant's car; and (2) the contents of Defendant's phone prior to its seizure by law enforcement.

Apparently, Defendant made some calls on his phone in the presence of law enforcement after his arrest. Thus, the phone may contain evidence relevant to those calls, e.g., numbers called or length of the call, and the like.[8] Because of the Government's concession, it was unnecessary for me to find facts regarding those calls. In light of the Government's concession regarding evidence after Defendant was handcuffed, as discussed at the hearing, any evidence added to the phone after it was seized, I recommend the Court deem it inadmissible.

### 4. *Use of otherwise suppressed evidence for impeachment purposes*

Lastly, the Government would like to reserve the right to use Defendant's suppressed statements for impeachment at trial. In *Baftiri*, the Eighth Circuit was asked to determine "whether the recording of a telephone conversation obtained by the government in violation of Title III of the Omnibus Crime Control and Safe Street Acts of 1968, 18 U.S.C., could properly be used to impeach the defendant's testimony." 236 F.3d at 856. The Eighth Circuit explained that:

---

[8] No mention of text messages, emails, social media messages, or similar content that might be found on the phone was alluded to. However, if any such information was placed on the phone after it was initially seized by law enforcement, it could have been the product of the alleged Fifth Amendment violations that were not addressed at the hearing because of the Government's concession. Thus, this evidence should also be barred by the concession.

16

It is reasonable to assume that Congress had this background in mind when the statute was passed, and that, in the absence of an express statement, it did not intend to draw the line of exclusion in a different place.

As the Supreme Court explained in *United States v. Havens*, 446 U.S. at 627–28, 100 S.Ct. 1912,

> [T]he ends of the exclusionary rules [are] thought adequately implemented by denying the government the use of the challenged evidence to make out its case in chief. The incremental furthering of those ends by forbidding impeachment of the defendant who testifies was deemed insufficient to permit or require that false testimony go unchallenged, with the resulting impairment of the integrity of the factfinding goals of the criminal trial. We reaffirm this assessment of the competing interests and hold that a defendant's statements . . . are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt.

In the present case, the evidence in question was received for impeachment purposes only. The jury was told that it could not be considered as substantive evidence going to the guilt or innocence of the defendant. It was relevant only to the jury's decision whether to believe the defendant's testimony.

*Id*. at 857-58 (alterations in original). Thus, I recommend that the Court find that Defendant's suppressed statements that are inadmissible because of the Government's concession may be used only for impeachment if Defendant chooses to testify at trial and the evidence is otherwise admissible.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny in part** and **deny as moot in part** Defendant's Motion to Suppress. **(Doc. 28.)** I further recommend that the Court order Defendant's statements made after he was handcuffed

17

be deemed inadmissible at trial consistent with the Government's concession and the foregoing discussion.

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 7th day of August, 2023.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa