IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN TRINIDAD QUALLS,<br><br>Defendant. | No. 23-CR-2021-CJW-MAR<br><br>**ORDER** |

_____

## I.  INTRODUCTION

This matter is before the Court on defendant's Motion to Suppress. (Doc. 28). The government filed a timely resistance and a supplement to that resistance. (Docs. 30; 40). The Court referred defendant's motion to the Honorable Mark A. Roberts, United States Magistrate Judge, for a Report and Recommendation ("R&R"). On July 21, 2023, Judge Roberts held a hearing on the motion to suppress. (Doc. 41). Then, on August 7, 2023, Judge Roberts recommended the Court deny-in-part and deny as moot-in-part defendant's motion to suppress. (Doc. 44). Defendant objected to Judge Roberts' R&R. (Doc. 50). For the following reasons, the Court **overrules** defendant's objections, **adopts** Judge Roberts' R&R, and **denies-in-part** and **denies-in-part as moot** defendant's Motion to Suppress.

## II.  STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, the district court must review the objected portions de novo. 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate [judge]'s report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

## III. FACTUAL BACKGROUND

After reviewing the hearing transcript (Doc. 49), the Court finds Judge Roberts accurately and thoroughly set forth the relevant facts in the R&R. The Court adopts Judge Roberts' summary of the facts here.

> At 2:54 a.m. on December 31, 2022, Floyd County Sheriff's Office Deputy Dylan Isakson pulled Defendant over for speeding. (Government Ex. 1, Isakson Dash-Camera Footage, at :30-36.) Deputy Isakson was positioned in the median near Rudd Park Road and Highway 18. His patrol car lights were off, and he was operating his radar detector from a stationary position. Defendant's vehicle approached Deputy Isakson's patrol car from the rear, traveling westbound. Deputy Isakson activated his radar unit and obtained a reading of Defendant's vehicle traveling 88 miles per hour in a 65 mile-per-hour zone. (*Id.*; Isakson Hr'g Test. at 10.) Deputy Isakson turned on the lights of his patrol car, entered the roadway, caught up to

2

Case 6:23-cr-02021-CJW-MAR    Document 51    Filed 08/29/23    Page 2 of 14

Defendant, and initiated a traffic stop. (Isakson Hr'g Test. at 11.) Defendant's vehicle pulled over to the side of the road.

Deputy Isakson approached the vehicle from the passenger side and noted that Defendant was alone in the vehicle. (*Id.*) Deputy Isakson asked Defendant where he was traveling from, and Defendant replied that he was traveling from visiting his mother in Michigan. (Government Ex. 1 at 1:50.) When asked where he was driving to, Defendant replied that he was going to visit his sister in Clear Lake, Iowa. (*Id.*) Defendant was fully compliant and provided Deputy Isakson his Arizona driver's license and a pouch containing his vehicle registration and proof of insurance. (*Id.* at 2:15-2:50.) Deputy Isakson testified that Defendant's overly friendly manner and overly compliant behavior, combined with his apparent nervousness, raised suspicion. (Isakson Hr'g Test. at 14, 25-26.)

Deputy Isakson returned to his patrol vehicle to run Defendant's information and observed marijuana residue, or "shake," when handling the pouch that contained Defendant's vehicle registration. (Defendant Ex. A at 2:15-5:11.) At the hearing, Deputy Isakson explained that once he was in his patrol car, he could smell the odor of marijuana emanating from the paperwork and observed marijuana residue or green leafy residue inside the pouch containing the vehicle registration. (Isakson Hr'g Test. at 13.) Deputy Isakson then returned to Defendant's vehicle to explain that he had probable cause to search the vehicle. (Defendant Ex. A at 5:50-6:15.) Deputy Isakson also asked Defendant a series of questions pertaining to marijuana. (*Id.* at 5:30.) Defendant stated there was not any marijuana in the vehicle. (*Id.* at 5:37.) Defendant was asked if marijuana was legal in Arizona, his state of residence, to which he replied "yes." (*Id.* at 5:43.) Defendant stated that he was not under the influence while driving but admitted that he had legally smoked a "joint" of marijuana earlier that day while he was in Michigan. (*Id.* at 6:20-6:50.) At the hearing, Deputy Isakson also stated that when he re-approached Defendant's vehicle, he observed more marijuana residue near the shifter of the center console[1] in Defendant's car. (Isakson Hr'g Test. 14.)

Deputy Isakson instructed Defendant to exit the vehicle and he performed a patdown of Defendant's person to detect any weapons and ensure his safety. (*Id.* at 7:00-7:10.) Deputy Isakson found a large quantity of cash in Defendant's pocket. (*Id.* at 8:30-8:50.) When asked how much

---

[1] Defendant objects to this finding of fact. (Doc. 50, at 1-2). For reasons stated in its analysis, the Court overrules this objection.

3

cash was in his pocket, Defendant replied "probably 600 bucks." (*Id.*) Deputy Isakson placed Defendant in the front seat of his patrol car. (Isakson Hr'g Test. at 15.) At this time, Defendant was not handcuffed. (*Id.*) At this point Defendant had access to his cell phone and may have used it while the search proceeded.

Deputy Isakson then began searching Defendant's vehicle while Defendant sat uncuffed in the patrol vehicle. Defendant appeared nervous and called Deputy Isakson back to the patrol vehicle several times. Deputy Isakson testified that he believed Defendant was attempting to divert his attention from the search and make the search go more quickly. (*Id.* at 16.) The search produced a vape pen in the driver's side door. Deputy Isakson could smell the odor of burnt THC on the vape pen. Deputy Isakson also found a large bag of methamphetamine under the front passenger seat. (*Id.* at 17.) After finding the first bag of methamphetamine, Deputy Isakson returned to the patrol car and had Defendant place his phone on the car's dash, as Defendant had been speaking to his mother, and then placed Defendant in handcuffs in front of his body. (*Id.* at 17-18.) Deputy Isakson returned to Defendant's vehicle to complete the search and found a second bag of methamphetamine on the front passenger's seat. (*Id.* at 18.)

(Doc. 44, at 2-5).

## IV. ANALYSIS

In the Motion to Suppress, defendant argues the Court should suppress defendant's statements to officers, the contents of defendant's phone, controlled substances found in his vehicle, and any evidence obtained as a result of the search and interrogations because there was no probable cause to search the vehicle, the resulting statements and evidence are fruit of the poisonous tree, and defendant did not voluntarily waive his *Miranda* rights. (Doc. 29).

In his R&R, Judge Roberts recommended the Court deny-in-part and deny-in-part as moot defendant's motion. (Doc. 44). Judge Roberts found the evidence supported that Deputy Isakson had probable cause to support the stop because defendant was driving in excess of the posted speed limit. (Doc. 44, at 8-9). Judge Roberts also found the

4

evidence supported that Deputy Isakson had probable cause to search the vehicle under federal law—regardless of states' marijuana laws—because he smelled marijuana and observed marijuana residue in defendant's vehicle registration pouch and observed marijuana residue on the vehicle's center console upon approaching it a second time. (*Id.*, at 9-13). Judge Roberts found this Court should deny the motion to suppress defendant's statements after he was handcuffed as moot, as the government will not present those statements in its case-in-chief. (*Id.*, at 13-14). As to the contents of defendant's phone, Judge Roberts found the evidence supported the assertion the search warrant was based only on the search of the car and none of defendant's statements after he was handcuffed, and thus, the Court should deny the motion as to those phone contents. (*Id.*, at 14-16). Should the phone contain contents created after defendant's arrest and the phone's seizure, however, Judge Roberts recommended this Court deem it inadmissible. (*Id.*, at 16). Last, Judge Roberts recommended the Court find defendant's suppressed statements admissible for impeachment purposes at trial if defendant should testify. (*Id.*, at 16-17).

Defendant objects to Judge Roberts' findings in the R&R: (1) that Deputy Isakson observed marijuana residue on the center console near the gear shifter of defendant's vehicle; (2) that Deputy Isakson had probable cause to search defendant's vehicle; (3) the factual finding that wind may have factored into Deputy Isakson's ability to smell marijuana odor during his initial interaction with defendant. (Doc. 50, at 1-2).

### A.   *Objections to Factual Findings*

Defendant objects to two of Judge Roberts' factual findings related to the vehicle search. First, defendant objects to the finding that wind had any effect on Deputy Isakson's ability to smell marijuana, and second, defendant objects to the finding that Deputy Isakson observed marijuana on the center console of the vehicle. (*Id.*).

5

For the following reasons, the Court **overrules** defendant's objection as to the wind finding and **overrules** defendant's objection as to the observation of marijuana.

### 1. *Wind Effect on Deputy Isakson's Senses*

Defendant objects to Judge Roberts' factual finding that wind may have factored into Deputy Isakson's inability to smell the odor of marijuana when he made initial contact with defendant. (*Id.*). To this point, defendant asserts the evidence does not indicate there was wind, as the body camera footage did not capture noise as would typically occur were there wind, and Deputy Isakson testified he did not recall the wind speed during the traffic stop. (*Id.*).

The Court is not persuaded by defendant's argument. Deputy Isakson testified that "the wind and wind speed" probably impeded his ability to detect the scent of marijuana upon his initial interaction with defendant. (Doc. 49, at 46-47). He also testified that he did not recall what the wind speed was that evening and that if there were strong winds it would be picked up on his body cam microphone. (*Id.*, at 51-52). Deputy Isakson's testimony about the wind was not a model of clarity, but from the context it appears that he testified there was some wind that night, the strength of which is unknown.

Judge Roberts found Deputy Isakson credible. (Doc. 44, at 2). Defendant has not objected to this credibility finding and has not asserted there are reasons to doubt the officer's credibility, yet defendant asks the Court to find Deputy Isakson was not credible that there was wind that affected his ability to smell the marijuana the first time he approached defendant's car. The Court has no reason to doubt Deputy Isakson's credibility, and nothing in the record shows there was no wind—though perhaps not "strong winds" or strong enough winds for the body camera to capture their sound. (*See id.*, at 52).

6

Nevertheless, whether the wind affected Deputy Isakson's ability to smell the marijuana is relevant because during the traffic stop, Deputy Isakson smelled and saw marijuana residue in the registration pouch. Defendant handed the pouch to Deputy Isakson while defendant was seated in his own car. That, alone, established probable cause to search the car for marijuana. Whether Deputy Isakson was initially unable to smell the marijuana standing outside defendant's vehicle and whether that was because of wind is immaterial to the fact that at some point in the traffic stop, he smelled and saw marijuana residue that had just been in defendant's vehicle.

Thus, the Court **overrules** defendant's objection.

### 2. *Marijuana Residue Near Center Console*

Next, defendant objects to the finding that Deputy Isakson observed marijuana residue on the center console. (Doc. 50, at 1-2). In support, defendant asserts Deputy Isakson used a flashlight to see into the dark interior of the vehicle, as the stop occurred around 3:00 AM, Deputy Isakson was standing approximately five feet from defendant's vehicle upon observing the residue, and Deputy Isakson never collected the residue; defendant argues, therefore, the alleged residue near the center console was insufficient to factor into Deputy Isakson's probable cause determination. (*Id.*).

Deputy Isakson, who again Judge Roberts found credible, testified under oath that there was marijuana residue on the center console area. (Docs. 44, at 2; 49, at 15, 38). There is no evidence contradicting that this observation occurred. Even still, as detailed below, Deputy Isakson had probable cause the moment he observed and smelled marijuana residue in defendant's registration pouch. In the body camera footage, Deputy Isakson informed defendant he found marijuana residue in the registration pouch and consequently had probable cause to search from that alone. (Defendant's Exhibit A, at 2:59:00-3:00:18). The record shows Deputy Isakson did not rely upon the marijuana residue near the center console in his initial determination that he had probable cause to

7

search the vehicle despite defendant's assertion the deputy had relied on it. Though the marijuana residue on the center console would certainly lend to the totality in evaluating whether Deputy Isakson had probable cause to believe evidence or contraband were in the vehicle, it was neither his basis for determining he had probable cause nor a factor in his initial decision to search—the body camera footage shows he was going to search regardless upon discovering residue in the pouch. Regardless, defendant has not provided a basis for calling into doubt that Deputy Isakson observed marijuana residue near the center console, and thus, his objection is unavailing.

Thus, the Court **overrules** defendant's objection.

### B. *The Initial Stop and Subsequent Vehicle Search*

Defendant objects to Judge Roberts' conclusion Deputy Isakson had probable cause to search defendant's vehicle. (Doc. 50, at 2). Defendant asserts the facts Deputy Isakson claims contributed to his belief he had probable cause to search are weak, particularly because the minimal amount of marijuana residue in the registration pouch would not lead a reasonable person to believe there was a fair probability that marijuana, other contraband, or evidence would be located in the vehicle. (*Id.*).

A traffic stop constitutes a seizure for purposes of the Fourth Amendment, and therefore must be supported by probable cause or reasonable, articulable suspicion that criminal activity has occurred or is occurring. *United States v. Hollins*, 685 F.3d 703, 705–06 (8th Cir. 2012); *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021); *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016); *United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007). "Reasonable suspicion is a less demanding standard than probable cause[.]" *Alabama v. White*, 496 U.S. 325, 330 (1990).

Probable cause is present when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016) (cleaned up). "A[n] officer has probable cause . . .

8

when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2012) (cleaned up). "[T]he mere probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, is all that is required." *United States v. Winarseke*, 715 F.3d 1063, 1067 (8th Cir. 2013) (internal citation and quotations omitted).

In contrast, reasonable suspicion requires that an officer be "aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *Hollins*, 685 F.3d at 705 (citation and internal quotation marks omitted). Whether under the probable-cause standard or reasonable-suspicion standard, an officer's subjective intentions play no part in the analysis. *Whren v. United States*, 517 U.S. 806, 813 (1996).

When an officer has lawfully stopped a vehicle, the officer may "search the vehicle without a warrant if the officer has probable cause" to search the vehicle under what is called the "automobile exception" to the Fourth Amendment warrant requirement. *United States v. Mayo*, 627 F.3d 709, 713–14 (8th Cir. 2010). "The automobile exception may apply even when there is little to no chance that the vehicle will be moved or its contents destroyed." *United States v. Soderman*, 983 F.3d 369, 376 (8th Cir. 2020) (further citation omitted).

Defendant's objection fails. As a preliminary matter, the Court agrees with Judge Roberts that Deputy Isakson had probable cause to perform a traffic stop. Iowa Code Section 321.285 places restrictions on driving in excess of the posted speed limit, making it unlawful. IOWA CODE § 321.285; IOWA CODE § 805.8A(5). Defendant was driving at a rate of 88 miles per hour through a highway with a posted speed limit of 65 miles per hour, as confirmed by radar. (Doc. 49, at 12). Having observed a traffic violation,

9

Deputy Isakson had probable cause to stop defendant. *United States v. Maurstad*, 35 F.4th 1139, 1143-44 (8th Cir. 2022); *Sallis*, 507 F.3d at 650-51.

Deputy Isakson also had probable cause to search defendant's vehicle. During the traffic stop, Deputy Isakson smelled an odor of marijuana emanating from a pouch containing defendant's registration which, necessarily, had been in defendant's vehicle. (Doc. 49, at 14-15). Upon looking into the pouch, Deputy Isakson observed marijuana residue. This observation of actual, real marijuana—even in residue, "shake" form— gave Deputy Isakson probable cause to search defendant's vehicle. *United States v. Booker*, 269 F.3d 930, 932 (8th Cir. 2001) (holding officer's observation of marijuana residue in the vehicle during lawful traffic stop gave the officer probable cause to search). The body camera footage captured Deputy Isakson inform defendant that Deputy Isakson had probable cause to search the vehicle because he observed and smelled marijuana in the pouch that had just come from defendant's vehicle, and he testified consistently that he determined he had probable cause based on seeing and smelling marijuana in the pouch. (Doc. 49, at 14-15; Defendant's Exhibit A, at 2:59:00-3:00:18). Thus, the Court finds that Deputy Isakson had probable cause to search the vehicle.

Even had the marijuana in the pouch not been enough by itself to constitute probable cause to search defendant's car, the Court would still find probable cause existed. Upon returning to defendant's vehicle, Deputy Isakson saw and smelled additional marijuana residue emanating from the vehicle. Further, defendant admitted to using marijuana earlier in the day, which is illegal at the federal level and is still considered contraband. Visible marijuana residue in the car indicated there could be additional marijuana in the car and gave rise to probable cause to search the car. *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011); *United States v. Thomas*, Case No. 4:22-CR-40046-KES, 2023 WL 4424092, at *9 ("Although the legality of marijuana

10

varies among the 50 states under state law, as of the writing of this opinion, marijuana is illegal under federal law (Controlled Substances Act, 21 U.S.C. § 801) . . ..").

In the totality, the marijuana residue in the pouch, marijuana residue in the car, and defendant's admission that he used marijuana earlier in the day would indicate to a reasonable officer that there was a fair probability that additional contraband or evidence of a crime, namely additional marijuana, would be found in the vehicle. *See Booker*, 269 F.3d at 932; *Brown*, 634 F.3d at 438. Again, it matters not that Deputy Isakson did not smell marijuana in the early moments of his interaction with defendant; that he at some time during the lawful stop smelled and saw marijuana residue in the vehicle and in the pouch is enough. Thus, in weighing these facts together, Deputy Isakson still would have had probable cause in the totality to search defendant's car under the automobile exception.

Accordingly, defendant's objection is **overruled**.

### C. *Defendant's Statements After Being Handcuffed*

Neither party has objected to Judge Roberts' legal conclusion that the motion to suppress defendant's statements made after he was handcuffed should be denied as moot. The Court has done its own research and examination of this matter and agrees with Judge Roberts' findings and conclusions. The government informed the Court that it "will not introduce into evidence the contents of defendant's phone or any statements that defendant made to authorities on December 31, 2022, after he was handcuffed by Deputy Isakson." When the government informs a court it has no intention of offering some evidence at trial, any motion to suppress that evidence becomes moot. *United States v. Mitchell*, No. 08-CR-46-LRR, 2009 WL 36605, at *2 (N.D. Iowa Jan. 5, 2009); *see United States v. Walker*, No. 96–3036, 1997 WL 182609, at *1 n. 2 (8th Cir. Apr. 16, 1997). As such, this motion is moot as to the statements made after handcuffing but pre-*Miranda* warnings.

Thus, the motion to suppress these statements is **denied as moot**.[2]

### D. *Contents of Defendant's Phone*

Neither party has objected to Judge Roberts' legal conclusion that the Court should permit the government to introduce at trial evidence of the contents of defendant's phone that were not the product of interrogation. Defendant seeks only to suppress evidence obtained from the phone as fruit of the poisonous tree and does not challenge the validity of the search warrant. (Doc. 49, at 3-4). The government intends to offer the phone contents obtained as a result of the search warrant that were created prior to the phone's seizure; it does not intend to offer the contents created after the phone's seizure. (*Id.*). Judge Roberts recommended, therefore, that the Court also deem inadmissible any evidence of the phone contents created after the phone was seized.

First, the Court finds evidence obtained as a result of the search warrant for the phone should not be suppressed as fruit of the poisonous tree. The Court found the vehicle search was lawful, and thus, the tree is not poisonous; as a result, its fruit bears no poison and is not inadmissible on that basis. *United States v. Finley*, 56 F.4th 1159, 1166 (8th Cir. 2023) ("Of course, for there to be 'fruit,' there must first be a 'poisonous tree,' that is, 'an illegal search or seizure' or 'an illegality.'") (further citations omitted). Defendant has not challenged the validity of the warrant, which the government asserts was based only on the vehicle search, not on events after Deputy Isakson handcuffed defendant. (Docs. 39, at 3-4; 40, at 2). Thus, the phone contents created prior to the phone's seizure and obtained under the search warrant may be introduced at trial.

---

[2] The government represented to the Court that it would not introduce evidence of defendant's statements made after handcuffing but before he was read his *Miranda* rights in its case-in-chief, which is the sole reason the motion is moot. The government will be held to that assertion, of course, and may not, therefore, introduce those statements in its case-in-chief should this matter proceed to trial.

Second, the Court finds evidence of the phone contents created after its seizure are inadmissible. Once more, defendant informed the Court of its intention not to present evidence from the phone other than that made prior to the moment Deputy Isakson handcuffed defendant and seized the phone. (Doc. 49, at 3-7). Because the government has stated it will not introduce evidence from the phone made after its seizure, the motion as to post-seizure phone contents is moot. *Mitchell*, 2009 WL 36605, at *2. Thus, the Court finds the government may not offer evidence of the phone contents created post-phone seizure.

Thus, the government may offer evidence of the phone contents made prior to its seizure but not any evidence added to the phone after its seizure.

### E.     *Use of Suppressed Statements for Impeachment*

Last, neither party objected to Judge Roberts' recommendation that the Court find the government may use otherwise suppressed evidence at trial for the limited purpose of impeachment, should defendant exercise his right to testify. The Court agrees with Judge Roberts' recommendation and finds the government will be permitted to introduce suppressed statements for the sole purpose of impeachment, should defendant open the door by testifying at trial. *See United States v. Havens*, 446 U.S. 620, 627 (1980) (holding a "defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt.").

Accordingly, the government may use defendant's otherwise suppressed statements for impeachment purposes.

## V. CONCLUSION

For these reasons, defendant's objections are **overruled**, Judge Roberts' R&R (Doc. 44) is **adopted**, and defendant's Motion to Suppress (Doc. 28) is **denied-in-part and denied-in-part as moot**.

**IT IS SO ORDERED** this 29th day of August, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa